UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

CHRISTIAN CASEY LLC, a New York Limited Liability
Company dba SEAN JOHN; and STUDIO IP HOLDINGS
LLC, a Delaware Limited Liability Company dba
ROCAWEAR,

                    Plaintiffs,

       vs.

A & E STORES, INC., a New Jersey Corporation; FORMAN
MILLS, INC., a Pennsylvania Corporation; FAT ALBERT'S
WAREHOUSE, INC., a New York Corporation; ALBERT
SROUR, an individual; SPOT INC., an unknown business
entity; SAPMAN SPORTSWEAR, an unknown business entity;
JAREL ENTERPRISES; an unknown business entity;
CAVALIER SPORTSWEAR INC.; an unknown business entity;
SABS II INC., an unknown business entity; GREAT VALUE
INC; an unknown business entity; NEW YORK OFFPRICE,
an unknown business entity; D&N SALES, an unknown
business entity; ALMOST NOTHING INC., an unknown
business entity; CAPICO, an unknown business entity;
VOLUME APPAREL, an unknown business entity; CA
OFFPRICE, an unknown business entity; M.E. SALES
CORP., an unknown business entity; BARCODE., an unknown
business entity; FACTORY OVERRUNS, INC., an unknown
business entity; TOWELLE CORP., an unknown business entity;
TC FASHIONS INC., an unknown business entity; ALL-WAYS,
a Washington Corporation; and DOES 1-10, inclusive,
                    Defendants.

_____

Civil Action No.
08 CV 00870(GBD)

## **FIRST AMENDED COMPLAINT**

    Plaintiffs Christian Casey LLC dba Sean John ("Sean John"), and Studio IP

Holdings LLC dba Rocawear ("Rocawear") for the claims against Defendants A & E

Stores, Inc., Forman Mills, Inc., Fat Albert's Warehouse, Inc., and Albert Srour (collectively "Defendants") respectfully allege as follows:

## JURISDICTION AND VENUE

1.     Plaintiffs filed this action against Defendants for trademark counterfeiting and infringement, and trademark dilution under the Lanham Trademark Act of 1946, 15 U.S.C. §1051 et seq. (the "Lanham Act") and related claims of unfair competition and trademark dilution under the statutory and common law of the State of New York.  This Court has subject matter jurisdiction over the Federal trademark counterfeiting and infringement and trademark dilution claims under 28 U.S.C. §§1121(a), 1331, 1338(a) and 1367.

2.     This Court has personal jurisdiction over Defendants because Defendants are corporations organized and existing under the laws of the state of New York and/or conduct business within the state of New York.

3.     This action arises out of wrongful acts, including advertising, offering for sale, selling and distributing products by Defendants within this judicial district.  Venue is proper in this district pursuant to 28 U.S.C. §1391 because the claims asserted arise in this district.

## THE PARTIES

4.     Plaintiff Christian Casey LLC is a limited liability company duly organized and existing under the laws of the State of New York.  Christian Casey does business as Sean John.

5.     Plaintiff Studio IP Holdings LLC is a limited liability company organized and existing under the laws of the State of Delaware, with an office and place of business at 103 Foulk Road, Wilmington, Delaware 19803. Studio IP owns all rights, title, and

interest to the Rocawear® names, brands, trademarks, intellectual property, and related names worldwide.

6.     Upon information and belief, A&E Stores, Inc. ("A&E") is a corporation organized and existing under the laws of the state of New Jersey with its principal place of business in Terterboro, New Jersey.

7.     Upon information and belief, A&E operates various stores located in the states of New York, New Jersey, Pennsylvania, Massachusetts, Connecticut, Illinois, Maryland, and Rhode Island.

8.     Upon information and belief, Forman Mills, Inc. ("Forman Mills") is a corporation organized and existing under the laws of the state of Pennsylvania with a principal place of business in Pennsauken, New Jersey 08110.

9.     Upon information and belief, Forman Mills operates various stores located in the states of New York, New Jersey, Pennsylvania, Maryland, Delaware, and Michigan.

10.    Upon information and belief, Fat Alberts Warehouse, Inc. ("Fat Albert's) is a corporation organized and existing under the laws of the state of New York with a principal place of business in Brooklyn, New York.

11.    Upon information and belief, Albert Srour is an individual residing in New York and doing business at Fat Albert's Warehouse, Inc.

12.    During discovery Plaintiffs learned that in addition to Pacesetter, the following entities sold unauthorized Sean John and Rocawear merchandise to Defendant A&E:

> a.  Spot Inc., an unknown business entity doing business within this judicial district;

- 3 -

b. Sapman Sportswear, an unknown business entity doing business within this judicial district;

c. Jarel Enterprises, an unknown business entity doing business within this judicial district;

d. Cavalier Sportwear Inc., an unknown business entity doing business within this judicial district;

e. SABS II Inc, an unknown business entity doing business within this judicial district;

f. Great Value Inc., an unknown business entity doing business within this judicial district;

g. New York Off Price, an unknown business entity doing business within this judicial district;

h. D&N Sales, an unknown business entity doing business within this judicial district;

i. Almost Nothing Inc., an unknown business entity doing business within this judicial district;

j. Capico, an unknown business entity doing business within this judicial district;

k. Volume Apparel, an unknown business entity doing business within this judicial district;

l. CA Offprice, an unknown business entity doing business within this judicial district;

m. M.E. Sales Corp., an unknown business entity doing business within this judicial district;

    n.  Barcode, an unknown business entity doing business within this judicial district;

    o.  Factory Overruns Inc., an unknown business entity doing business within this judicial district;

    p.  Towelle Corp., an unknown business entity doing business within this judicial district;

    q.  TC Fashions Inc., an unknown business entity doing business within this judicial district;

    r.  All-Ways., a Washington Corporation doing business within this judicial district.

13.    Plaintiffs are unaware of the names and true capacities of Defendants, whether individual, corporate and/or partnership entities, named herein as DOES 1 through 10, inclusive, and therefore sues them by their fictitious names. Plaintiffs will seek leave to amend this complaint when their true names and capacities are ascertained. Plaintiffs are informed and believes and based thereon alleges that said Defendants and DOES 1 through 10, inclusive, are in some manner responsible for the wrongs alleged herein, and that at all times referenced each was the agent and servant of the other Defendants and was acting within the course and scope of said agency and employment.

14.    Plaintiffs are informed and believe, and based thereon allege, that at all relevant times herein, Defendants and DOES 1 through 10, inclusive, knew or reasonably should have known of the acts and behavior alleged herein and the damages caused thereby, and by their inaction ratified and encouraged such acts and behavior. Plaintiffs further allege that Defendants and DOES 1 through 10, inclusive, have a non-delegable duty to prevent or cause such acts and the behavior described herein, which duty Defendants and DOES 1 though 10, inclusive, failed and/or refused to perform.

PLAINTIFF'S COMPLAINT FOR DAMAGES

## NATURE OF ACTION

15.     Plaintiffs seek injunctive relief, damages and a declaratory judgment based upon Defendants' unfair competition with Plaintiffs arising from Defendants' willful infringement and dilution of Plaintiffs' respective trademarks.  Defendants' willful infringement has impacted both upon Plaintiffs' rights directly as well as Plaintiffs' ability to maintain consumer satisfaction.  In this regard, it is noteworthy that most, if not all, of the infringing items below were presented in a confusingly deceptive manner, they are of obvious inferior quality when compared to the authentic products of Plaintiffs' respective trademarks, and they are priced in such a way that the implication to the buying public is that these items are indeed genuine.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

### A.      Sean John's Family of Trademarks, Logos, and Designs

16.     Sean John has been and is now engaged in the business of manufacturing, promoting, distributing, and selling its high-quality clothing.  All of Sean John's products are manufactured pursuant to its strict specifications and quality control.

17.     Sean John has long used, prior to the acts of Defendants herein, several trademarks, including but not limited to Sean John, in plain and stylized format.

18.     Sean John is the owner of the world-famous mark Sean John.  On February 9, 1999, the Sean John mark was registered on the Principal Register of the United States Patent & Trademark Office as Registration No. 2466699, for "T-shirts, jackets, pants, shirts, coats, bandannas, sweatshirts, headwear and fashion accessories, namely underwear, boxer shorts."  Sean John has since registered its marks in connection with a variety of goods.  Sean John's rights to use in commerce the Sean John marks have become incontestable pursuant to 15 U.S.C. § 1065.

19.     The registrations for these Sean John marks are valid, subsisting, and exclusively owned by Sean John.

20.     At all times relevant hereto, Sean John's Marks have been continually used by Sean John throughout the world and in the United States, including New York, on or in connection with the manufacture, distribution, sale and promotion of its products.

21.     As a result of Sean John's widespread and continuous use, advertisement, and promotion of its products in connection with Sean John's Marks, they have become widely known and recognized as identifying Sean John as the source of a wide variety of clothing and related goods and as distinguishing such goods from those of others.  Sean John's Marks have come to represent and symbolize the excellent reputation of Sean John's products and Sean John's valuable goodwill among members of the public throughout the world and in the United States, including New York.  Sean John's Marks have acquired a secondary meaning throughout the world and in the United States, including New York.

**B.      Studio IP's Family of Trademarks, Logos, and Designs**

22.     Studio IP Holdings LLC is the worldwide owner of the trademarks Rocawear and various composite trademarks comprising the Rocawear mark and assorted design components (hereinafter, collectively, the "Rocawear Marks").  Rocawear Marks include, but are not limited to U.S. Registration Nos. 3007571, 2633943, and 2781618.

23.     Since its inception in 1999, the Rocawear line has emerged as a global force in men's, women's and children's fashion with worldwide sales and distribution.

24.     Rocawear-branded products, and their packaging all prominently bear the trademark Rocawear.

25.     Each of the Rocawear Marks has been continually used in commerce since its respective date of first issue.

26.     Because of Plaintiff's extensive use of the Rocawear Marks, the Rocawear line has built up significant goodwill therein.  The success of Plaintiff's' marketing efforts is evidenced by, among other things, the Rocawear® products and the unsolicited media attention that the Rocawear line has received.

27.     Plaintiff's products are distributed throughout the United States and in numerous foreign countries.

28.     The Rocawear apparel line is the brainchild of multi-platinum rap star Shawn "Jay-Z" Carter ("Jay-Z") and his partner and record executive Damon Dash, who are leading forces in nearly every aspect of urban entertainment.

29.     The Rocawear line was introduced in 1999 to consumers across the United States during Jay-Z's history making "Hard Knock Life" tour, where all the artists, including rappers Method Man, DMX, Redman, Memphis Bleek, Beanie Sigel and DJ Clue wore Rocawear clothing to promote the line.

30.     Millions of fans were exposed to the fashionable urbanite Rocawear apparel line as the tour traveled to over 40 U.S. cities making Rocawear the number one selling young men's sportswear brand in its first year of business.

31.     Entertainers such as Snoop Dog, the late Aaliyah, Trick Daddy, Ginuwine, Capone & Noreaga, Scarface, and athletes, such as Allen Iverson, David Reid, Jesse Armstead, Marco Antonio Barrera, Zab Judah, Antonio Freeman and Speedy Claxton can all be seen wearing Rocawear clothing.

32.     Rocawear apparel has been featured in various major network shows, such as Saturday Night Live, Moesha, Soul Food, Frasier, Steve Harvey, The Parkers, BET's 106 & Park and in movies, such as "Training Day" with Denzel Washington and Ethan Hawke.

33.     Furthermore, the Rocawear apparel line has been praised and recognized in numerous articles appearing in both trade publications and publications directed to the general public, including Vibe, New York Magazine, XXL, Black Enterprise, Source, Hamptons Magazine, Entertainment Weekly, Blaze, Slam, DNR, Sportswear International and in daily newspapers, such as The New York Daily Times and The New York Post.

34.     The Rocawear collection of apparel is comprised of tee shirts, jeans, sweat suits, sweaters, jackets, outerwear, footwear and leather apparel with over 120 styles produced each season.  Rocawear's urban collegiate apparel is coveted by young men and women around the world.

35.     Rocawear clothing is sold in department stores and boutiques throughout the United States, including Macy's, Belk's, Dayton Hudson, Bourdin's, Fines, Up Against the Wall, Rags, Demo and The Buckle and is sold through distributors in Canada, throughout Europe, Central America and in Japan.

36.     In its first 18 months since its introduction, the Rocawear apparel line generated sales at retail of over Eighty Million Dollars ($80,000,000).

37.     The Rocawear Marks have come to identify, in the United States and throughout the world, a line of hip, urban, cutting edge clothing.

38.     In March of 2007, Plaintiff Studio IP Holdings LLC acquired full ownership and the entire interest to all of the Rocawear Marks.

C.      **Defendants' Infringing Use of Plaintiffs' Respective Trademarks**

39.     With actual and constructive notice of the above-mentioned federal and state trademark registrations and Plaintiffs' extensive and continuous use of Plaintiffs' respective Rocawear and Sean John Marks, Plaintiffs are informed and believe, and upon such information and belief aver, that Defendants have purchased, offered for sale and/or

sold counterfeit "Rocawear" and/or "Sean John" merchandise and have otherwise infringed the Rocawear and/or Sean John Marks.

40.     In 2003, pursuant to a counterfeiting investigation, law enforcement executed a search warrant on a business named Pacesetter Apparel Group (hereinafter, "Pacesetter") located in Georgia.  At Pacesetter, law enforcement discovered large quantities of counterfeit Rocawear and Sean John clothing.

41.     Law enforcement confiscated Pacesetter's counterfeit merchandise from its warehouse, and also seized Pacesetter's office computers and various documents, including,  invoices, purchase orders and other business records.

42.     Consequently, in or around July 2005, law enforcement allowed Plaintiffs' counsel to inspect the various documents and computer records seized from Pacesetter. Upon examination of these records, Plaintiffs learned the identities of those who purchased counterfeit Rocawear and/or Sean John merchandise from Pacesetter for resale to consumers.

43.     Records revealed that Defendant A&E had purchased an inordinate amount of counterfeit Rocawear and Sean John apparel from Pacesetter for resale to consumers. Furthermore, during the course of discovery, Plaintiffs learned that A&E purchased a considerable amount of unauthorized Sean John and Rocawear merchandise from a number of other entities, which are identified hereinabove in paragraph 12.

44.     Upon information and belief, Defendants' use of Plaintiffs' Marks through, inter alia, the creation and/or sale of inferior quality clothing bearing Plaintiffs' respective trademarks were willful, having been adopted with knowledge of Plaintiffs' prior rights in and to the Plaintiffs' Marks, with the intent to trade on and benefit from the goodwill established in Plaintiffs' respective trademarks by Plaintiffs.

## FIRST CLAIM FOR RELIEF

**(Trademark Infringement Under the Lanham Act)**

45.     Plaintiffs incorporate herein by reference the averments of the preceding paragraphs as though fully set forth herein.

46.     Plaintiffs' Marks are nationally recognized, including within the Southern District of New York, as being affixed to goods and merchandise of the highest quality and coming from Plaintiffs.

47.     The registrations embodying Plaintiffs' respective trademarks are in full force and effect and Plaintiffs have authorized responsible manufacturers and vendors to sell merchandise with these marks.

48.     Defendants' unauthorized use of Plaintiffs' respective trademarks on inferior quality merchandise in interstate commerce and advertising relating to same constitutes false designation of origin and a false representation that the goods and serves are manufactured, offered, sponsored, authorized, licensed by or otherwise connected with Plaintiffs or come from the same source as Plaintiffs' respective goods and are of the same quality as that assured by Plaintiffs' respective trademarks.

49.     Defendants' use of Plaintiffs' respective trademarks is without Plaintiffs' permission or authority and in total disregard of Plaintiffs' rights to control its trademarks.

50.     Defendants' activities are likely to lead to and result in confusion, mistake or deception, and are likely to cause the public to believe that Plaintiffs have produced, sponsored, authorized, licensed or is otherwise connected or affiliated with Defendants' commercial and business activities, all to the detriment of Plaintiffs.

51.     Upon information and belief, Defendants' acts are deliberate and intended to confuse the public as to the source of Defendants' goods or services and to injure

Plaintiffs and reap the benefit of Plaintiffs' goodwill associated with Plaintiffs' respective trademarks.

52.     Defendants' acts violate the Lanham Act.

53.     As a direct and proximate result of Defendants' willful and unlawful conduct, Plaintiffs have been injured and will continue to suffer injury to its business and reputation unless Defendants are restrained by this Court from infringing Plaintiffs' respective trademarks.

54.     Plaintiffs have no adequate remedy at law.

55.     In light of the foregoing, Plaintiffs are entitled to injunctive relief prohibiting Defendants from using Plaintiffs' respective trademarks for any purpose, and to recover from Defendants all damages, including attorneys' fees, that Plaintiffs have sustained and will sustain as a result of such infringing acts, and all gains, profits and advantages obtained by Defendants as a result thereof, in an amount not yet known, as well as the costs of this action pursuant to 15 U.S.C. § 1117(a), attorneys' fees and treble damages pursuant to 15 U.S.C. § 1117(b), and/or statutory damages pursuant to 15 U.S.C § 1117(c).

## SECOND CLAIM FOR RELIEF

### (False Designations of Origin, False Descriptions, and Dilution)

56.     Plaintiffs incorporate herein by reference the averments of the preceding paragraphs as though fully set forth herein.

57.     Plaintiffs' respective trademarks are "famous" within the meaning of Lanham Act.

58.     Defendants have used in commerce in connection with the sale of its products counterfeit reproductions of Plaintiffs' trademarks, which is likely to cause, and most likely has caused, confusion or mistake as to the affiliation, connection, or

association between Defendants and Plaintiffs, or as to the origin, sponsorship, or approval of said counterfeit goods by Plaintiffs.

59.   Defendants' acts described above have diluted and continue to dilute Plaintiffs' unique and distinctive trademarks.  These acts violate the Lanham Act, have injured and, unless immediately restrained, will continue to injure Plaintiffs, causing damage to Plaintiffs in an amount to be determined at trial, as well as irreparable injury to Plaintiffs' goodwill and reputation associated with the value of Plaintiffs' respective trademarks.

60.   Upon information and belief, Defendants' unlawful actions began long after Plaintiffs' Marks became famous.

61.   Upon information and belief, Defendants acted knowingly, deliberately and willfully with the intent to trade on Plaintiffs' reputation and to dilute Plaintiffs' Marks. Defendants' conduct is willful, wanton and egregious.

62.   Plaintiffs have no adequate remedy at law to compensate it fully for the damages that have been caused and which will continue to be caused by Defendants' unlawful acts, unless they are enjoined by this Court.

63.   In light of the foregoing, Plaintiffs are entitled to injunctive relief prohibiting Defendants from using Plaintiffs' respective trademarks, and to recover all damages, including attorneys' fees, that Plaintiffs have sustained and will sustain, and all gains, profits and advantages obtained by Defendants as a result of their infringing acts alleged above in an amount not yet known, and the costs of this action.

## THIRD CLAIM FOR RELIEF

### (Common Law Unfair Competition)

64.   Plaintiffs incorporate herein by reference the averments of the preceding paragraphs as though fully set forth herein.

65.     Plaintiffs own and enjoy common law trademark rights in New York and throughout the United States.

66.     Defendants' unlawful acts in appropriating rights in Plaintiffs' common law trademarks were intended to capitalize on Plaintiffs' goodwill for Defendants' own pecuniary gain.  Plaintiffs have expended substantial time, resources and effort to obtain an excellent reputation for itself and its family of Marks.  As a result of Plaintiffs' efforts, Defendants are now unjustly enriched and is benefiting from property rights that rightfully belong to Plaintiffs.

67.     Defendants' unauthorized use of Plaintiffs' Rocawear and Sean John Marks have caused and is likely to cause confusion as to the source of Defendants' clothing, all to the detriment of Plaintiffs.

68.     Defendants' acts are willful, deliberate, and intended to confuse the public and to injure Plaintiffs.

69.     Defendants' acts constitute unfair competition under New York common law.

70.     Plaintiffs have been irreparably harmed and will continue to be irreparably harmed as a result of Defendants' unlawful acts unless Defendants are permanently enjoined from its unlawful conduct.

71.     The conduct herein complained of was extreme, outrageous, fraudulent, and was inflicted on Plaintiffs in reckless disregard of Plaintiffs' rights.  Said conduct was despicable and harmful to Plaintiffs and as such supports an award of exemplary and punitive damages in an amount sufficient to punish and make an example of the Defendants and to deter them from similar such conduct in the future.

72.     Plaintiffs have no adequate remedy at law.

73.    In light of the foregoing, Plaintiffs are entitled to injunctive relief prohibiting Defendants from using Plaintiffs' Marks, and to recover all damages, including attorneys' fees, that Plaintiffs have sustained and will sustain and all gains, profits and advantages obtained by Defendants as a result of their infringing acts alleged above in an amount not yet known, and the costs of this action.

## FOURTH CLAIM FOR RELIEF

### (Injury to Business Reputation and Dilution, NY CLS Gen Bus § 360-l)

74.    Plaintiffs incorporate herein by reference the averments of the preceding paragraphs as though fully set forth herein.

75.    Plaintiffs' respective trademarks are distinctive marks by virtue of their substantial inherent and acquired distinctiveness, extensive use, and extensive advertising and wide spread publicity of the marks nationwide.

76.    As a result of Plaintiffs' respective trademarks' substantial inherent and acquired distinctiveness, extensive use, and the extensive advertising and publicity of the marks nationwide, Plaintiffs' respective trademarks have become strong and are widely renown.

77.    The actions of Defendants complained of herein are likely to injure the business reputation and dilute the distinctive quality of Plaintiffs' respective trademarks which are famous.

78.    The foregoing acts of Defendants constitute dilution and injury to business reputation in violation of Section 360-l of New York General Business Law.

79.    The conduct herein complained of was extreme, outrageous, fraudulent, and was inflicted on Plaintiffs in reckless disregard of Plaintiffs' rights.  Said conduct was despicable and harmful to Plaintiffs and as such supports an award of exemplary and

punitive damages in an amount sufficient to punish and make an example of the Defendants and to deter them from similar such conduct in the future.

80.    By reason of the foregoing, Plaintiffs are being damaged by Defendants' unauthorized and illegal use of Plaintiffs' respective trademarks in the manner set forth above and will continue to be damaged unless Defendants are immediately enjoined under Section 360-1 of New York General Business Law from using Plaintiffs' respective trademarks.

81.    Plaintiffs will be irreparably injured by the continued acts of Defendants, unless such acts are enjoined.

82.    Plaintiffs have no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully pray that this Court enter judgment in its favor and against Defendants as follows:

A.    Granting temporary, preliminary and permanent injunctive relief restraining Defendants, their agents, servants, employees, officers, associates, attorneys, and all persons acting by, through, or in concert with any of them, from: (1) using Plaintiffs' respective trademarks or committing any other act which falsely represents or which has the effect of falsely representing that the goods and services of Defendants are licensed by, authorized by, offered by, produced by, sponsored by, or in any other way associated with Plaintiffs; (2) otherwise infringing Plaintiffs' registered and common law family of marks; (3) otherwise diluting Plaintiffs' family of marks; and (4) unfairly competing with Plaintiffs.

B.    Awarding actual damages suffered by Plaintiffs as a result of Defendants' acts;

C.     Ordering an accounting by Defendants of all gains, profits and advantages derived from their wrongful acts;

D.     Ordering Defendants to disgorge its profits;

E.     Awarding Plaintiffs all of Defendants' profits and all damages sustained by Plaintiffs as a result of Defendants' wrongful acts, and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a);

F.     Awarding treble damages in the amount of Defendants' profits or Plaintiffs' damages, whichever is greater, for willful infringement pursuant to 15 U.S.C. § 1117(b);

G.     Awarding applicable interest, costs, disbursements and attorneys' fees, pursuant to 15 U.S.C. § 1117(b);

H.     Awarding Plaintiff statutory damages pursuant to 15 U.S.C. §1117(c);

I.     Awarding Plaintiffs such other and further relief as the Court deems just and proper.


Dated:  December 24, 2008                    TUCKER & LATIFI LLP

                                             By:  _____

                                                  **Robert Tucker (RLT 1027)**
                                                  **Ali Latifi (AL 3620)**
                                                  Attorneys for Plaintiffs Christian Casey
                                                  LLC and Studio IP Holdings LLC
                                                  TUCKER & LATIFI LLP
                                                  160 East 84th Street
                                                  New York, New York 10028
                                                  Telephone: (212) 472-6262
                                                  Facsimile: (212) 744-6509


- 17 -

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury as to all claims in this litigation.

Dated: December 24, 2008

TUCKER & LATIFI LLP

By: _____

**Robert Tucker (RLT 1027)**
**Ali Latifi (AL 3620)**
Attorneys for Plaintiffs Christian Casey
LLC and Studio IP Holdings LLC
TUCKER & LATIFI LLP
160 East 84th Street
New York, New York 10028
Telephone: (212) 472-6262
Facsimile: (212) 744-6509

PLAINTIFF'S COMPLAINT FOR DAMAGES